## MOKAVA CORPORATION et al. v. DOLAN.
### No. 132.

Circuit Court of Appeals, Second Circuit.
Jan. 2, 1945.

[5] N. L. R. B. v. Standard Gage Co., 2 Cir., 146 F.2d 33.

[6] N. L. R. B. v. Sandy Hill Iron & Brass Works, 2 Cir., 145 F.2d 631.

George A. Langan, of Syracuse, N. Y. (Hamilton C. Rickaby, of New York City, of counsel), for Robert R. Meyer.

Allen C. Bragaw, of New York City (Robert H. O'Brien, of New York City, of counsel), for Mokava Corporation.

Willis H. Michell, of Syracuse, N. Y., for T. Frank Dolan, Jr.

Before CHASE, CLARK, and FRANK, Circuit Judges.

344

FRANK, Circuit Judge.

■ 1. The lumping together, in one class, No. 7, of the two first mortgages was erroneous.[4] That order was entered when the present plan was not before the court. We need not, therefore, consider whether a failure to appeal from a classification order, entered when a plan is before the court, precludes a later appeal from the order approving a plan, challenging the fairness of that plan, which raises the validity of the classification order. The error here was aggravated when the court approved a plan according very substantially different treatment to the two mortgages.

The total face amount of claims comprising this improper class was $554,000. The face amount of Dolan's first mortgage on the Main Building ($364,000), fell just short of two-thirds of $554,000. If, then, Meyer's purchase of the Annex mortgage enabled him to prevent holders of certificates in that mortgage from voting on the plan, Dolan could not obtain the necessary two-thirds vote of that class.

■ Meyer effectively acquired that mortgage through his purchase and the assignment thereof on April 1, 1944. We need not consider the validity of the demand under § 275 of the New York Real Property Law. For, as the court below said, the First Trust made a valid voluntary assignment; under the terms of the certificates, such an assignment at once divested most of the certificateholders, including Dolan, of any interest in the mortgage; and the conduct of the First Trust, as trustee under the divers trusts holding differently-worded certificates, operated as such an acquiescence in the assignment as to divest those trusts also of any interest in the mortgage. True, the assignment was conditional; but, since the court below correctly held that the condition was satisfied, it should have held the assignment effective as of April 1, 1944, the day it was executed.

■ The court below, however, seemed to believe that Meyer acted with grave impropriety in buying the Annex mortgage, because Meyer's purpose in so doing was obviously to frustrate acceptance of the plan. On the facts here we see no such impropriety. In any event, there can be no such impropriety sufficient to amount to lack of good faith under § 203 of the Bankruptcy Act, 11 U.S.C.A. § 603. For there can be no bad faith in buying up claims in order to frustrate the obtaining of acceptances from members of a class invalidly constituted. Moreover, the court could find lack of good faith under § 203 only after a "hearing upon notice," and no such hearing was held.

Here Meyer, in frustrating the acceptances by the certificateholders, other than Dolan, was doing them no harm: Through his purchase of the mortgage they obtained full payment in cash of principal and accrued interest, whereas under the plan they would have received substantially less cash (i. e., for one-half their accrued interest they would have received only preferred stock). As the lower court itself said, the struggle over the plan was merely a contest between Meyer and Dolan for "control of the hotel." The plan's treatment of the first mortgage on the Main Building would have given Dolan that control. There was nothing wrong in the fact that Meyer's purchase of the Annex mortgage (which gave Dolan cash in full for his certificates) prevented Dolan from getting control through an erroneous classification order.

Accordingly, the district court erred in its order allowing the acceptances of the certificateholders to be counted and in refusing to consider Meyer's vote against the plan.

■ 2. The court below approved the plan without acceptances from the holders of second mortgage bonds on the ground that they would be paid fifty cents on the dollar in cash which the court found was all they were worth. In so holding, the court erred. For there was no hearing at which evidence was taken that supported that finding. The evidence taken at the hearing on the debtor's solvency did not serve that purpose, for the issue was not at all the same at the hearings in which that evidence was received.

■ Nor is it relevant that Meyer paid 50 or less for the second mortgage bonds he held. To reduce a creditor's participation in the plan to the amount he paid for

4 Group of Institutional Investors v. Chicago, Milwaukee, St. P. & P. R. Co., 318 U.S. 523, 562ff, 63 S.Ct. 727, 87 L. Ed. 959, Ecker v. Western Pacific R. Corporation, 318 U.S. 448, 482, 63 S.Ct. 692, 87 L.Ed. 892, Gerdes, Corporate Reorganizations, § 1045.

his bonds (except in unusual circumstances not present here) would be harmfully to reduce the value of such bonds to those who previously owned them.[5]

The lower court intimated that Meyer was in some way estopped because he had previously been ready to acquiesce in a plan allotting only 50 in cash to these bonds. Assuming, merely arguendo, that in proper circumstances such an estoppel could appropriately apply, those circumstances do not exist here. For the record indicates that Meyer had proposed a plan which would yield these bonds not only 50 in cash but a portion of that part of the new common stock which the Dolan plan allotted to Dolan as holder of the first mortgage on the Main Building.

3. The lower court erred in approving that part of the plan which provided for full payment in cash of the unsecured Merchandise Brokerage claim; such a provision, in a plan which did not provide full compensation, in some form, for the second mortgage bonds, was clearly wrong.[6]

Reversed and remanded.

---

[5] The logic of the lower court's ruling in this respect would compel a ruling that Dolan, as to the first mortgage on the Main Building, could participate only to the extent of $291,000, the amount he paid for that mortgage.

[6] See, e.g., Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S.

Ct. 1, 84 L.Ed. 110; Ecker v. Western Pacific R. Corporation, 318 U.S. 448, 483, 63 S.Ct. 692, 87 L.Ed. 892.

We see no reversible error in the order that the filing of claims with the trustee in bankruptcy should be regarded as a filing with the court.